IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AMY JOHNSON, | ) |
| | ) |
| PLAINTIFF, | ) CIVIL ACTION NO. |
| | ) |
| vs. | ) |
| | ) HON. |
| BENDER MANAGEMENT LLC, | ) |
| | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

PLAINTIFF, AMY JOHNSON, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits her Complaint against Bender Management, LLC., ("Bender").

## JURY DEMAND

COMES NOW PLAINTFF, AMY JOHNSON, and hereby makes her demand for trial by jury.

## PARTIES AND JURISDICTION

1. At all times relevant to this complaint, Plaintiff was a resident of Kalamazoo County in the State of Michigan.

1

2.      Defendant Bender is an owner-operator specializing in the acquisition and management of value-add multifamily assets with a principal place of business in Kalamazoo and Calhoun County in the State of Michigan.

3.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5.      Venue is proper in the Western District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6.      Plaintiff, an African American woman, one of the only minorities working for Defendant, began her employment as an Assistant Manager at Lakeview Apartments in Kalamazoo and was later promoted to Community Manager at Fox Grove Apartments in Battle Creek.

7.      Sometime around the end of June, Plaintiff had a disagreement with her boss, Katelyn Hodge, who is white.

8. The disagreement with her boss related to Plaintiff opposing Hodge's improper directives and electing to conduct her duties in accordance with company policy, including but not limited to when Plaintiff told Hodge that a permit was required to install a water heater.

9. Plaintiff believed the issue was resolved. However, after this disagreement, Plaintiff began to feel harassed by Hodge.

10. Hodge frequently called the office to "confirm" Plaintiff's presence.

11. In the event Plaintiff did not answer the phone due to being busy on the property, Hodge assumed she was not working and called the maintenance man to verify Plaintiff's whereabouts.

12. A fake review was posted on Google about Plaintiff and the property.

13. It was confirmed that the reviewer was not a tenant, but Plaintiff believes this was part of Hodge's increasing scrutiny of her work after their disagreement.

14. Hodge also falsely accused Plaintiff of having her boyfriend complete her work for her such as cleaning the hallways, which did not happen.

15. On or around July 23 2023, Plaintiff's brother passed away, resulting in Plaintiff taking bereavement leave on July 24th and 25th.

16. Plaintiff returned to work on July 26th but informed Hodge she would also need to take off July 27th and 28th to mourn, returning to work on July 31st.

17. On or around August 1, 2023, Plaintiff received her termination notice, citing reasons of unprofessionalism, attendance issues, and poor work performance.

18. Hodge further falsely told third parties and tenants that Plaintiff had poor performance and that she was fired for this reason.

19. Plaintiff disputes these claims, as she was professional with tenants, vendors, and others, and only missed days she had previously requested off.

20. Plaintiff further consistently received bonuses, indicating satisfactory work performance.

21. During her employment, Plaintiff did not receive any complaints nor write-ups from corporate or her supervisors.

22. Throughout her time with the company, Plaintiff received promotions and consistently demonstrated good performance, as evidenced by her paystubs and bonuses.

23. Individuals of other races were permitted to remain employed despite known issues with their performance, while Plaintiff, who is African American, was terminated for made up reasons.

24. Defendant had a practice of discriminating against African Americans and/or minority employees and treating them worse than white employees, including refusing to promote them at the same rate that they did white employees.

25.     Plaintiff filed a charge with the EEOC, No. 471-2024-02490, alleging retaliation and race/color discrimination with the EEOC issuing a Right to Sue letter on or about July 23, 2024.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

26.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

27.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

28.     Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or association with a particular race.

29.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to Title VII.

30.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

31.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

32. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

33. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

34. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

35. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

36. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

37. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

38. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color, or association with a particular race.

39. Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

40. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

41. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

42. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

43. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

44. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

45. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

46. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

47. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

48. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

49. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff opposed directives violating company policy.

50. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

51. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, and terminated her position.

52. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

53. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

54. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

55. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

56. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ELCRA

57. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

58. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

59. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

60. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

61. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when Plaintiff opposed directives violating company policy.

62. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

63. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included terminating her.

64. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

65. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

66. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

67. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

68. Plaintiff requests relief as described in the Prayer for Relief below

## COUNT V
## DISCRIMINATION IN VIOLATION OF 42 USC § 1981

69. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

70. 42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race and gender discrimination.

71. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

72. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American males, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

73. Plaintiff engaged in activity protected by 42 USC § 1981 when she opposed directives violating company policy

74. The intentional discrimination and retaliation by Defendant that Plaintiff experienced included wrongfully terminating her.

75. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

76. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was wrongfully terminated.

77. But for Defendant's unlawful discrimination against Plaintiff, Plaintiff would not have suffered damages as set forth herein including her termination.

78. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT VI

### WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

79. Plaintiff incorporates by reference all allegations in the preceding paragraphs

80. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge, where:

   a. Explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

    b. The alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

    c. The reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

81. Plaintiff's discharge came as the result of the fact that she stood up to Hodge and refused to violate company policy, including but not limited to advising Hodge that a permit was needed to install a hot water heater. Plaintiff was eventually terminated the first chance Defendant could find when Plaintiff was tending to his ill son.

82. An employee may not be discharged for a reason that is contrary to the public policy of Michigan. Thus, an employee should not be discharged for trying to follow the law.

83. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

84. Plaintiff requests relief as described in the Prayer for Relief below.

85. As such, Plaintiff is entitled to relief as set forth below.

## **RELIEF REQUESTED**

PLAINTIFF, Amy Johnson, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  October 21, 2024

Respectfully Submitted,

*/s/ Carla D. Aikens*
Carla D. Aikens (P69530)
Rejanae M. Thurman (P85701)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com